WOLF, J.
In this worker’s compensation appeal, the Special Disability Trust Fund (Fund) appeals a final order of the Judge of Compensation Claims (JCC) granting reimbursement from the Fund to the employer and carrier, Broward County Board of County Commissioners and Underwriters Safety & Claims (E/C). The Fund raises two issues on appeal, one of which is dis-positive:
Whether the JCC erred in finding that the E/C was not required to have knowledge of a 20% preexisting permanent impairment to be entitled to reimbursement from the Special Disability Trust Fund and thus erred in ordering reimbursement without evidence of such knowledge.
We hold that the JCC erred in finding that there was no requirement that the employer have knowledge of the level of impairment of the employee. We, therefore, reverse for entry of an order in favor of the Fund.
In June 1996, the employee suffered a right shoulder injury in the course of her employment with the Brevard County Board of County Commissioners. At the time of the June 1996 injury, the employee had just undergone surgery to repair a right rotator cuff tear which occurred in a prior accident which was not work related.[1] Following the June 1996 injury, the employee was required to undergo two surgeries to her right shoulder, ultimately resulting in maximum medical improvement in March of 1998 with a 5% permanent impairment rating. The carrier paid 15 weeks of impairment income benefits.
The E/C filed a claim with the Special Disability Trust Fund for reimbursement of the impairment income benefits paid; the claim was denied on the basis of, among other things, inadequate evidence of employer’s knowledge of the statutory preexisting permanent impairment. The E/C filed a notice of hearing on the claim, in July 2001.
At the hearing, the employee’s primary treating physician, testified by deposition as the only expert witness. He testified as to the employee’s June 1996 accident and the additional surgical procedures which ultimately resulted in the assignment of a 5% impairment rating, and he opined that the employee had suffered a 20% partial impairment as a result of the preexisting injury.
*1037 The employee’s supervisor was the only witness for the employer concerning knowledge of the employee’s impairment as a result of the earlier non-work-related injury. The supervisor gave only vague testimony concerning the employee’s job restrictions, and as to her knowledge of impairment, she testified as follows:
I really don’t think I knew what [employee’s] condition was because I don’t think she was going for medical care at that time. So, I was uncertain of what her condition was. Even though I had doctors notes, I had contradictory notes and contradictory statements.
In fact, the record shows that at the time of the work-related injury no doctor had given an impairment rating as a result of the non-work-related injury.
The pertinent statutory section relating to the employer’s entitlement to reimbursement in this case is section 440.49(6)(a)24, Florida Statutes, which was substantially amended in 1994. See Ch. 93-415, § 43, Laws of Fla. The amended statute clearly specifies that to be entitled to reimbursement the employer must have prior knowledge of not only the existence of a previous injury, but must also specifically have known that the injury constituted a 20% impairment:
440.49(6) EMPLOYER KNOWLEDGE, EFFECT ON REIMBURSEMENT.—
(a) Reimbursement is not allowed under this section unless it is established that the employer knew of the preexisting permanent physical impairment prior to the occurrence of the subsequent injury or occupational disease and that the permanent physical impairment is one of the following:
[[Image here]]
24. Any permanent physical condition which, prior to the industrial accident or occupational disease, constitutes a 20% impairment of a member or of the body as a whole.
(Emphasis added.)
The amended section 440.49(6)(a) was construed in Staff Leasing v. Special Disability Trust Fund, 784 So.2d 512 (Fla. 1st DCA 2001). In that case, we upheld the JCC’s ruling that the employer was not entitled to reimbursement where the employer could not demonstrate that it had the specific prior knowledge required by the statute. In Staff Leasing, the employee had a preexisting back injury and the subsection at issue was 440.49(6)(a)21, which requires specific knowledge that the preexisting back injury had resulted in “disability over a total of 120 or more days, if substantiated by a doctor’s opinion .... ” In Staff Leasing, we specifically found that where the subparagraph required specific knowledge in addition to the general knowledge of a preexisting injury, the employer was required to show that the specific information required was known prior to the subsequent injury:
[I]n order to obtain reimbursement from the Fund for a preexisting permanent physical impairment of the back under subparagraph 21, the employer must show that it had knowledge of sufficient information about the employee’s preexisting back condition to have been able to conclude that the employee’s back condition had resulted in disability for an aggregate time of greater than 120 days.
[[Image here]]
Because the record evidence does not show that, prior to the subject workplace accident, the employer had acquired sufficient information concerning [employee’s] preexisting back condition to know that it constituted a “preexisting permanent impairment,” as defined by subparagraph 21 of section *1038 440.49(6)(a), we agree that reimbursement from the Fund is not allowed.
Id. at 513-514 (emphasis added).
Like subparagraph 21 which this court construed in Staff Leasing, subparagraph 24 at issue in this case also requires specific knowledge on the part of the employer in order to be entitled to reimbursement from the Fund. That requirement is “a 20 percent impairment of a member or of the body as a whole.” In the instant case, there was no evidence that the employer had knowledge of any substantial level of impairment. We, therefore, must reverse.
BOOTH and LEWIS, JJ., concur.

. The employee was released to return to work three days after the initial surgery and was assigned to light duty; after physical therapy, her physician released her to work on February 28, 1996, without restrictions. Less than three months later she sustained the compensable injury for which the E/C seeks reimbursement in this case.